UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

*FILED*

*04 APR -2 PM 1:42*

*U.S. DISTRICT COURT*
*N.D. OF ALABAMA*

| | |
|---|---|
| JUANITA DEAN, individually and on behalf of all other similarly situated individuals, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| HUNTSVILLE CITY BOARD OF EDUCATION, | ) ) ) |
| Defendant. | ) |

Civil Action No. CV-03-S-347-NE

**ENTERED**

APR 0 2 2004

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

## MEMORANDUM OPINION

Plaintiff Juanita Dean, individually and on behalf of other similarly situated individuals, asserts claims under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, alleging that defendant Huntsville City Board of Education failed to compensate her and others for overtime work.[1]  The action is before the court on plaintiff's motion for conditional class certification and issuance of court supervised notice to all others similarly situated to advise them of their right to participate in the collective action pursuant to § 216(b) of the FLSA.[2]  Specifically,

---

[1] Pursuant to 29 U.S.C. § 207, an employer must compensate an employee at the rate of not less than one and one-half times the regular rate at which he is employed for a workweek longer than forty hours.

[2] 29 U.S.C. § 216(b) provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be,

95

plaintiff seeks certification of a class of current and former non-exempt employees employed in various job classifications.[3] Upon careful consideration of the pleadings, evidentiary submissions, and the parties' briefs, the court concludes that the motion for conditional class certification is due to be denied.

## I. THE EVIDENTIARY SUBMISSIONS

Plaintiff's complaint states that she was employed by defendant as a custodian from February of 2000 until February of 2002, and that during her employment she worked more than 500 hours of uncompensated overtime. She seeks to bring a collective action "on behalf of a class of similarly situated individuals [who] were employed as non-exempt employees of defendant in various job categories, such as teacher's aides, custodians, secretaries, assistant coaches, bus drivers, bookkeepers, cafeteria workers, and maintenance workers."[4]

In support of her contention that a class should be conditionally certified under

---

and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

[3]Doc. nos. 1 (Complaint) & 9 (Amended Complaint). Employees who hold executive, administrative or professional positions (including academic administrative personnel or elementary or secondary school teachers) are exempt from the overtime compensation provision of the Fair Labor Standards Act. 29 U.S.C. § 213. It follows that all other employees are "non-exempt" from that provision.

[4]Doc. no. 1 (Complaint) ¶ 6.

2

§ 216(b), plaintiff submitted documentation indicating that defendant conducted a "self-audit" supervised by a United States Department of Labor Wage and Hour Division investigator for the time period commencing July 1, 2000, through September 14, 2002. As a result of the self-audit, violations of the FLSA were discovered, and more than 100 employees were due to be paid retroactive wages.[5]

Plaintiff also submitted the affidavit of G. Wayne Culver, a retired United States Department of Labor Wage and Hour Division investigator. Mr. Culver stated that he reviewed the calculations performed by defendant during the self-audit, and has determined that "approximately 10 percent are in error."[6] Mr. Culver further stated that those employees identified by the self-audit were not paid the correct amount, and that "[t]he Huntsville City Board of Education even after the self-audit is still not in compliance with the Fair Labor Standards Act."[7]

Plaintiff provided a second affidavit of Mr. Culver, in which he stated that he reviewed an interview sheet used in the course of the self-audit relating to Rosa Whitman, a custodian employed by defendant, as well as some of her pay receipts, and spoke with her regarding her practice of recording her arrival and departure times

---

[5]Doc. no. 17 (Motion for Conditional Class Certification), ex. A.

[6]*Id.*, ex. B, at 1 ¶ 4.

[7]*Id.*

for work each day.[8]  Ostensibly based upon the foregoing, Mr. Culver concluded that it appeared that defendant paid Ms. Whitman an improper overtime rate.  Mr. Culver further stated:  "Before a complete determination can be made regarding the method of pay for Ms. Whitman and other custodians, additional information is needed, specifically the daily sign in and sign out sheets, payroll journals showing how overtime is paid and overtime computation sheets."[9]

Additionally, plaintiff filed the declarations of several putative plaintiffs.  The first, Rosa Kennemore stated that:  she has been employed by defendant since 1994 as a cafeteria worker; her scheduled work hours were from 7:30 a.m. until 2:00 p.m. with a thirty-minute lunch break; her actual work hours were 6:15 a.m. until 2:45 p.m. with a lunch break that was subject to interruption; she often was required to work more than forty hours each per week; and she was not contacted in connection with the self-audit.[10]

Jennifer Caetio stated that:  she has been employed as a bus driver since 1992; her scheduled work hours were 6:00 a.m. until 9:15 a.m. and 1:00 p.m. until 4:55 p.m.; her actual work hours were 6:00 a.m. until 9:15 a.m., 10:45 a.m. until 12:00 p.m., and 1:00 p.m. until 4:55 p.m.; she also transported students for field trips,

---

[8] *Id.* at unnumbered page 4 ¶¶ 3-5.

[9] *Id.* at unnumbered page 5 ¶ 10.

[10] Doc. no. 17 (Motion for Conditional Class Certification), ex. C, at unnumbered pages 1-2.

4

football games, and special education programs; she was often required to work in excess of forty hours per week; and she was not contacted in connection with the self-audit.[11]

Barry Wilkins stated that: he was employed from 1983 until 2001 in the Center for Developmental Learning as a bus aide and teacher's aide; that his scheduled hours as a bus aide were 6:15 a.m. until 10:00 a.m. and 2:20 p.m. until 5:00 p.m., and as a teacher's aide from 10:00 a.m. until 2:20 p.m., with a thirty-minute uninterrupted lunch period; his actual work hours were 6:15 a.m. until 5:00 p.m., with a thirty-minute lunch period that was subject to interruption; and he was not contacted in connection with the self-audit.[12]

Rosa Whitman stated that: she has been employed by defendant as a custodian since 1996; her scheduled work hours are 6:30 a.m. until 3:00 p.m., with a thirty-minute uninterrupted lunch break; her actual work hours are 6:30 a.m. until 3:00 p.m., with a thirty-minute lunch break that is subject to interruption; on occasions when her co-worker was absent, she worked from 4:30 a.m. until 3:00 p.m.; she often was required to work in excess of forty hours per week without overtime compensation; she completed a questionnaire in connection with the self-audit; and

> once [she] returned the questionnaire to the school [she] learned that

---

[11]*Id.* at unnumbered pages 3-4.
[12]*Id.* at unnumbered pages 5-6.

[she] would not receive any compensation through this audit and that [her] questionnaire was not turned in to the Huntsville City Board of Education.   In this audit [she] stated that [she] had received compensation for [her] overtime claims, but [she] only received straight pay and not one and one half [her] regular rate of pay as required for all hours worked over forty (40) in a given work week.[13]

Vernon Allison stated that: he has been employed by defendant as a custodian since 1988; his scheduled work hours are 3:00 p.m. until 11:30 p.m., with a thirty-minute uninterrupted lunch break; his actual work hours are 3:00 p.m. until 11:30 p.m., with a thirty-minute lunch break subject to interruption; during 2002, he worked at another school "in addition to [his] actual hours and was not compensated for the overtime hours worked"; and he was not contacted in connection with the self-audit.

Defendant submitted evidence in opposition to plaintiff's motion for conditional class certification.   Belinda K. Williams, who is defendant's Human Resources Director, provided an affidavit in which she stated that defendant operates forty-four schools in the City of Huntsville, including twenty-eight elementary schools, ten middle schools, six high schools, the Center for Developmental Learning, the Seldon Center, and the Huntsville Center for Technology, as well as four administrative facilities.[14]

Ms. Williams detailed the varied manner in which the hours worked by

---

[13]Doc. no. 17, ex. C, at unnumbered page 8.

[14]Doc. no. 21 (Defendant's evidentiary submission), ex. 1.

custodians, children's nutrition program workers, teacher's assistants, and secretaries

are recorded, processed, and paid.  She further related the following:

> In August 2002, the Board began a Self-Audit in conjunction with and through the cooperation and assistance of the United States Department of Labor, Wage and Hour Division ("DOL").  A copy of the report to the DOL regarding the Self-Audit was submitted in Support of the Motion for Conditional Class Certification.  Under the DOL's guidance, the Board attempted to contact its non-exempt, non-certified employees who had worked for the Board between July 1, 2000 and September 14, 2002 and had a schedule of at least 35 hours per week and its non-exempt, non-certified employees who held more than one position in order to ensure that the employees had paid their proper minimum wage and/or overtime wages for this time period.  The Board had approximately 1,500 non-exempt, non-certified employees during this period of time, approximately 900 of which were scheduled to work 35 hours or more per week or held more than one position.

> In conducting the Self-Audit, the Board initially found that 153 employees were owed minimum wage, straight time or overtime wages of one and one-half their regular rate for overtime they had worked during the relevant period.  The Self-Audit revealed that the majority of the employees who were owed straight time or overtime had accumulated straight time or overtime due to being interrupted by work during their lunch period and/or either reporting earlier than their scheduled time or staying past the scheduled end of their shift, primarily when a co-worker was absent.  The employees who were owed minimum wage amounts were in almost every instance non-certified personnel who were assistant coaches in various sports and had been paid with a stipend for the respective coaching position.  When the Board learned of these discrepancies between the employees' scheduled work and actual time they worked, it calculated the straight time, minimum wage, and overtime owed, and paid the employees the wages that were due them.  The total payment to the 153 employees was $456,804.82.  Since the initial report was completed other employees have come forward claiming straight time and overtime pay.  Some

corrections were also made to amounts initially paid, resulting in some employees receiving additional monies.  The Board has now paid 190 employees a total of $553,387.82 for straight time, minimum wage, or overtime.[15]

Ms. Williams also stated that, even though plaintiff retired from her position as a custodian prior to the commencement of the self-audit, defendant attempted to contact her by means of a letter mailed to her last known address.  Defendant received no response to the letter.[16]

With respect to Vernon Allison, whose declaration was submitted by plaintiff in support of her motion for conditional class certification, Ms. Williams explained that, despite Allison's assertion to the contrary, he was contacted by defendant in connection with the self-audit, as demonstrated by the questionnaire he completed and returned to defendant.[17]  With respect to Jennifer Caetio, Ms. Williams asserted that bus drivers are employed and paid by Laidlaw Transit, Inc. ("Laidlaw"), rather than by defendant.[18]  Ms. Williams stated that Rosa Kennemore's schedule did not meet the threshold of thirty hours per week during the period for which the self-audit was conducted and, accordingly, she was not included.[19]

---

[15]Doc. no. 21, ex. 1 (affidavit of Belinda K. Williams), at 3-4.

[16]*Id.* at 4.

[17]*Id.* at 4-5.

[18]*Id.* at 5.

[19]*Id.* at 6.

Defendant submitted the affidavit of Joanne Wilson, Payroll Supervisor in defendant's Finance Department. Ms. Wilson stated that payroll records, which were attached to her affidavit, reflect that plaintiff was paid $1,587.60 in overtime compensation for the 2000-2001 school year, and $1,233.25 in overtime compensation for the 2001-2002 school year, and that Vernon Allison was paid $1,551.42 in overtime compensation between October 31, 2001, and September 30, 2002.[20]   Ms. Wilson further stated that despite Rosa Whitman's assertion in her declaration that she was paid her regular rate of pay, rather than one and one-half times her regular rate of pay, for overtime hours worked, payroll records reflect that Whitman was paid at the overtime rate for a total amount of $4,740.37 during the period of August 31, 2000, through August 30, 2002.[21]   Ms. Wilson also states that Barry Wilkins was absent from work on "Family/Medical Leave" from January 17, 2001, through October 17, 2001, and that his employment with defendant ended on April 22, 2002.  Payroll records reflect that Wilkins was paid overtime compensation in the total amount of $747.39 during the period beginning September 29, 2000, through January 31, 2001.

Defendant also offered the affidavit of Amosene Sledge, who was an Elementary Assistant Principal during the self-audit period.  Ms. Sledge stated that

---

[20]Doc. no. 21, ex. 2 (affidavit of Joanne Wilson), at 2-3.

[21]*Id.* at 3-4.

James Sistrunk, another of defendant's employees identified by Barry Wilkins as one who did not receive overtime compensation, was under her supervision during the self-audit period, and that he worked 6.8 hours a day, for a total of thirty-four hours a week. Ms. Sledge further stated that Sistrunk did not work overtime during the self-audit period.[22]

In support of its contention that bus drivers such as Jennifer Caetio were not defendant's employees, defendant submitted a copy of its contract with Laidlaw for bus transportation services.[23] Defendant also submitted the affidavit of David Prince, branch manager of Laidlaw, who stated that Laidlaw's contract with defendant covers transportation of students to their respective schools and home each day, transportation of special education students, transportation of students to field trips, and transportation of students to various athletic and academic events. He states that Laidlaw owns and operates the buses, and provides bus drivers, who are Laidlaw employees. Laidlaw pays all wages, both regular and overtime, of its employees.[24]

Defendant provided the affidavit of Carol Wheelock, defendant's Children's Nutrition Program Director, who stated that Rosa Kennemore's regular work schedule was from 7:30 a.m. until 2:00 p.m., with a 30-minute lunch break, and that during the

---

[22]Doc. no. 21, ex. 3.

[23]*Id.*, ex. 4.

[24]*Id.*, ex. 7.

2000-2001 and 2001-2002 school years, she did not work more than forty hours in a week. Ms. Wheelock further identified, by reference to time sheets maintained by defendant, forty-three weeks during which Kennemore worked fewer than her regularly scheduled number of hours.[25]

Additionally, defendant submitted the affidavit of Peggy Davis, who was employed by defendant as manager of the Huntsville Middle School cafeteria during the period of July 1, 2000, through May 24, 2002, when she resigned. Ms. Davis stated that she supervised Rosa Kennemore, and that, contrary to Kennemore's statement in her affidavit, Kennemore did not work from 6:15 a.m. until 2:45 p.m. during the period that Ms. Davis managed the cafeteria. She further stated that she opened the cafeteria at 7:00 a.m. when she arrived for work, and locked the cafeteria at the end of her scheduled shift at 2:30 p.m. each day.[26]

## II. DISCUSSION

### A.    MOTION TO STRIKE

Defendant has filed a motion to strike certain portions of the declarations of putative plaintiffs Vernon Allison, Rosa Whitman, Barry Wilkins, Jennifer Caetio, and Rosa Kennemore, as well as certain portions of G. Wayne Culver's affidavits.[27]

---

[25]*Id.*, ex. 5.

[26]*Id.*, ex. 6.

[27]Doc. no. 19.

11

Defendant requests that the court strike the following two paragraphs, which appear in each of the declarations of Allison, Whitman, Wilkins, Caetio, and Kennemore:

> The actions taken by the Huntsville City Board of Education were, during my employment, of an ongoing and consistent nature, and were conducted with the knowledge of school representatives and officials working under the direction of either Superintendent Ann Roy Moore or respective supervisors, and, as such, constituted the policy of the Huntsville City Board of Education.
>
> The continued actions of the Huntsville City Board of Education of refusing to provide an uninterrupted lunch break, requiring "off the clock" work, shows a pattern, practice, and policy of the Huntsville City Board of Education of violations of the Fair Labor Standards Act of which [the declarant] ha[s] been subjected [sic].[28]

Defendant asserts that the foregoing paragraphs "clearly constitute conclusory allegations and legal arguments and are not based on the personal knowledge of the Declarants."[29] Defendant contends, moreover, that "the paragraphs are simply an attempt to create the impression that any violations of the FLSA which may have allegedly existed were a part of a pattern and practice and that such practices constituted the policy of the Board."[30]

The court agrees that the statements contained in the declarations are

---

[28]*Id.* at 2.

[29]*Id.*

[30]*Id.* at 2-3.

conclusory, and are unsupported by specific facts.  Rather than striking the statements, however, the court will consider them, but will accord them only the weight that they are due.

Defendant also requests that the court strike the following statement contained in G. Wayne Culver's first affidavit: "I have determined after reviewing [defendant's calculations in connection with the self-audit] that approximately 10 percent are in error."[31] Defendant argues that this statement should be stricken because Culver fails to specify which calculations were erroneous.  The court agrees that the statement is unsupported, and will accord it the weight it is due.

Additionally, defendant asks that the court strike the following statements contained in Culver's second affidavit:

3.    I have at this time reviewed the interview sheet of Rosa Whitman, a custodian employed by the Huntsville City Board of Education.

4.    I have reviewed at this time several pay receipts furnished Ms. Whitman with her paychecks.

5.    I have also talked with Ms. Whitman about her practices of signing in for work at the beginning of her work day and signing out at the end of her work day.

. . . .

9.    It appears from the information obtained to this point, that the improper overtime rate is being paid these employees.

---

[31]*Id.* at 3.

13

10.    Before a complete determination can be made regarding the method of pay for Ms. Whitman and other custodians, additional information is needed, specifically the daily sign-in and sign-out sheets, payroll journals showing how overtime is paid and overtime computation sheets.[32]

Defendant contends that the foregoing statements should be stricken because they contain inadmissible hearsay and, accordingly, are not based upon Culver's personal knowledge. The court agrees that these statements are problematic but, again, will consider them only for the weight they are due.

In view of the foregoing, the court concludes that defendant's motion to strike is due to be denied.

**B.     Motion for Conditional Class Certification**

**1.     The legal standard**

Section 216(b) of the FLSA provides, in pertinent part, as follows:

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. *No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.*

---

[32]*Id.* at 3-4.

29 U.S.C. § 216(b) (emphasis supplied).

Thus, plaintiffs wishing to join in a collective action must affirmatively "opt in." That requirement is not congruous with the procedures of the Federal Rules of Civil Procedure; once a class is certified according to Rule 23, all class members are bound by the court's decision unless they affirmatively "opt out." Because of this fundamental difference, courts have found the requirements of Rule 23 and those of 29 U.S.C. § 216(b) to be "irreconcilable." *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975); *see also Garner v. G.D. Searle Pharmaceuticals & Company*, 802 F. Supp. 418, 421 (M.D. Ala. 1991).

Unlike Rule 23, § 216(b) of the FLSA provides little guidance as to how such collective actions should be conducted. The Eleventh Circuit, recognizing this void, provided direction for district courts faced with collective actions in *Hipp v. Liberty National Life Insurance Company*, 252 F.3d 1208 (11th Cir. 2001). The Court of Appeals observed that, in order to maintain an opt-in class action under § 216(b), plaintiffs must establish that they are "similarly situated." *Id.* at 1217.

> For an opt-in class to be created under § 216(b), a named plaintiff must be suing on behalf of himself and other "similarly situated" employees. "'[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members.'" *Grayson [v. K Mart Corp.*, 79 F.3d 1086] at 1096 (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988), *aff'd in part and appeal dismissed in part*, 862 F.2d 439 (3d Cir. 1988), *aff'd*, 493

15

U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)).

*Id.* (footnote omitted).  To facilitate this determination, the Eleventh Circuit referred

to the "two-tiered" approach used in *Mooney v. Aramco Services Co.,* 54 F.3d 1207

(5th Cir. 1995):

> The first determination is made at the so-called "notice stage."  At the notice stage, the district court makes a decision — usually based only on the pleadings and any affidavits which have been submitted — whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.   If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in."  The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial.  At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question, the district court allows the representative action to proceed to trial.  If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.  The class representatives — *i.e.*, the original plaintiffs — proceed to trial on their individual claims.  Based on our review of the case law, no representative class has ever survived the second stage of review.

*Mooney,* 54 F.3d at 1213-14 (footnote omitted).  The Eleventh Circuit observed that

such a two-tiered approach to certification of § 216(b) opt-in classes "appears to be

an effective tool for district courts to use in managing these often complex cases, and

we suggest that district courts in this circuit adopt it in future cases." *Hipp*, 252 F.3d at 1219. The court further noted, however, that this approach was not required, and that the decision to certify a class under § 216(b) "remains soundly within the discretion of the district court." *Id.* In sum, "plaintiffs bear the burden of demonstrating a reasonable basis for their claim of classwide discrimination. The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Hipp*, 252 F.3d at 1219 (quoting *Grayson*, 79 F.3d at 1097 (internal citations and quotation marks omitted)).

As to the factual determination, the court reiterated its view, expressed in *Grayson*, of the requirement that the plaintiffs establish that they are similarly situated — *i.e.*, the requirement is "more elastic" and "less stringent" than the Rule 20[33] requirements for joinder and Rule 42[34] requirements for severance. *Id.*. In *Stone*

---

[33]Fed. R. Civ. P. 20(a) provides as follows:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons (and any vessel, cargo or other property subject to admiralty process in rem) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions and occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need

17

*v. First Union Corporation*, 203 F.R.D. 532 (S.D. Fla. 2001), the district court examined "how much less stringent the requirements are in practice, and what this means in terms of application of the criteria." *Id.* at 540. The court offered the following analysis:

> Because "similarly situated" is more elastic than Rule 20 and Rule 42, it is first necessary to understand what these rules require and then determine what a "more elastic and less stringent approach" would involve. A party seeking joinder of claimants under Rule 20 must establish two prerequisites: (1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and (2) some question of law or fact common to all persons seeking to be joined. *Alexander v. Fulton County*, 207 F.3d 1303, 1323 (11th Cir. 2000). As noted in *Alexander*, the central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits. *Id.* At the same time, the Federal Rules of Civil Procedure also recognize countervailing considerations to judicial economy, such as where the efficiency of a consolidated trial is outweighed by its potential prejudice to the litigants. *Id.* (citing Rule 42(b) as an example).
>
> In determining what constitutes a transaction or occurrence for the purposes of Rule 20(a), courts treat the term transaction flexibly.

---

not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

[34]Fed. R. Civ. P. 42(b) provides as follows:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

*Alexander*, 207 F.3d at 1323. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connections as upon their logical relationships. *Id.* By implication, "similarly situated," being a more elastic standard, may be satisfied even if the common nexus is not derived from the same transactions or occurrences, but the allegations and threshold proofs of "pattern or practice" discrimination are based upon different transactions or occurrences which are logically connected.

The second prong of Rule 20 does not require that all questions of law and fact raised by the dispute be common, but only that some question of law or fact be common to all parties. *Id.*; *see also Grayson*, 79 F.3d at 1095-96 (suggesting that "a united policy, plan, or scheme of discrimination" can satisfy Rule 20's commonality requirement). If the "similarly situated" standard is more flexible, it necessarily follows that some common questions of law or fact, but not all, must be shared among the putative plaintiffs with the named plaintiffs in the collective action. By implication, while a "unified policy, plan, or scheme of discrimination" can satisfy the "similarly situated" threshold if sufficiently pled and established, its absence alone does not mean that the criteria cannot otherwise be established by other means. Nonetheless, it is a factor for consideration.

Accordingly, that the plaintiffs are "similarly situated" may be established even if the transactions or occurrences are not identical. *Grayson* so holds when it quotes *Sperling v. Hoffmann-LaRoche* for the proposition that, "[P]laintiffs need show only 'that their positions are similar, not identical,' to the positions held by the putative class members." *Grayson*, 79 F.3d at 1096 (*quoting Flavel v. Svedala Indus. Inc.*, 875 F. Supp. 550, 553, which states, "The 'similarly situated' requirement, in turn, is considerably less stringent than the requirement of [Rule 23(b)(3)] that common questions 'predominate,' or presumably the Rule 20(a) requirement that claims 'arise out of the same action or occurrence.'").

*Stone,* 203 F.R.D. at 540-41.

Most of the published cases deal with the examination of whether a potential class is "similarly situated" in the context of a motion to decertify a conditionally certified class — *i.e.*, at the second, more stringent tier. In *Reed v. Mobile County School System*, 246 F. Supp. 2d 1227 (S.D. Ala. 2003), however, another district court in this circuit considering a motion for conditional class certification found the following factors identified by the *Stone* court relevant to the determination of whether the "similarly situated" requirement has been satisfied: (1) whether the putative plaintiffs all held the same job titles; (2) whether the putative plaintiffs worked in the same geographical location; (3) the extent to which the alleged violation occurred during different time periods and different supervisory personnel; and (4) whether the putative plaintiffs all alleged similar, though not identical, adverse treatment. *Id.* at 1232. As plaintiff correctly observes, *Stone* concerned a motion to decertify a class that had been conditionally certified. Even so, plaintiff has provided no justification for finding that those factors should not be applied when ruling on a motion for conditional class certification. The court, although mindful of the "lenient" standard applicable at this stage, finds those considerations helpful to guide the analysis. *See, e.g., Marsh v. Butler County School System*, 242 F. Supp. 2d 1086, 1091 (M.D. Ala. 2003) (In accordance with the two-tiered approach outlined by the Eleventh Circuit, a "court applies a lenient standard of 'similarly situated' at

20

the notice stage, and then applies a more stringent standard of 'similarly situated' at a stage typically precipitated by a defendant's motion for decertification.") (citing *Hipp*, 252 F.3d at 1218).

An alternative means of satisfying the "similarly situated" requirement is a showing by plaintiff that the defendant has engaged in a "pattern and practice" of conduct violative of the FLSA. *See Reed*, 246 F. Supp. 2d at 1233. In other words, a plaintiff must demonstrate that the allegedly unlawful conduct is "the company's standard operating procedure — the regular rather than the usual practice." *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1227 (11th Cir. 2001). A plaintiff alleging a pattern and practice of illegal conduct must establish "more than the mere occurrence of isolated or accidental or sporadic" acts. *Hipp*, 252 F.3d at 1227-28 (quoting *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336, 97 S. Ct. 1843, 1855, 52 L. Ed. 2d 396 (1977)).

### 2.   Analysis

Here, plaintiff seeks certification of a class of "non-exempt employees of defendant in *various job categories*, such as *teacher's aides, custodians, secretaries, assistant coaches, bus drivers, bookkeepers, cafeteria workers, and maintenance workers.*"[35] Plaintiff has submitted declarations of other employees of defendant who

---

[35]Doc. no. 1 (Complaint) ¶ 6.

state that they desire to be included as a plaintiff in the present action. Therefore, the court must determine whether plaintiff and other potential class members are "similarly situated," such that conditional certification is appropriate.

The first issue that must be addressed is the effect of the self-audit conducted by defendant under the supervision of the Wage and Hour Division of the United States Department of Labor. As a result of the self-audit, which covered the period of January 1, 2000, through September 14, 2002, defendant paid 190 employees retroactively for minimum wage, straight time, and overtime compensation that they had earned, but had not previously been paid, in the total sum of $553,387.82. According to defendant, the self-audit revealed that back wages were due primarily to those employees whose scheduled lunch periods had been interrupted by work assignments and those who had arrived early for their scheduled work shift, or worked beyond their scheduled shift, usually due to the absence of a co-worker.

Plaintiff alleges in her complaint that during the period that she was employed by defendant — *i.e.,* February of 2000 through February of 2002 — she was not compensated for more than 500 hours of overtime work. She states in her declaration submitted in support of the motion for conditional class certification that she was not contacted in connection with the self-audit. Defendant asserts that an attempt was made to contact plaintiff by letter at her last known address, and that it received no

response from her.  Accordingly, she did not receive payment for any overtime compensation that may have been due as a result of the self-audit.

Plaintiff argues that the results of the self-audit demonstrate that defendant has a policy or plan to violate the FLSA.  Plaintiff contends:

> The self audit presents evidence that a large number of nonexempt employees of the Huntsville City Board of Education were subjected to a policy that sought to minimize labor costs and discourage payment for overtime.  Regardless of whether the overtime hours were accrued from working through lunch, recording scheduled as opposed to actual time, failing to keep accurate employee records, or failing to record hours worked, the policy of not paying overtime for hours worked over forty in a work week "is evidence that these employees are 'similarly situated' within the meaning of  § 216(b) of the FLSA."  Each method of depriving overtime may be different from job classification to job classification and from school to school but the self audit shows that the failure to pay overtime for hours worked over forty in a work week is a standard practice of the Huntsville City Board of Education thus making every nonexempt employee under the FLSA similarly situated.[36]

Defendant maintains that the payment of overtime compensation to employees following the self-audit does not show the existence of a policy or plan to evade the requirements of the FLSA; instead, it "demonstrates [defendant's] strong intention to properly compensate all of its employees."[37]  Defendant has demonstrated that the self-audit revealed that roughly thirteen percent of its non-exempt employees had not

---

[36]Doc. no. 18 (Memorandum of Law in Support of Plaintiff's Motion for Conditional Class Certification), at 12-13 (citation omitted).

[37]Doc. no. 20 (Memorandum Brief in Opposition to Plaintiff's Motion for Conditional Class Certification), at 10.

been properly compensated during the relevant time period. Moreover, that figure includes some employees who were due minimum wage or additional regular — *i.e.,* non-overtime — compensation, the payment of which is not the subject of the present action.

The court concludes that the results of the self-audit do not constitute evidence of a policy or plan to violate the FLSA. Rather, defendant's payment of additional wages to certain employees, under the supervision of the Department of Labor, and the employees' acceptance of those payments, constitutes settlement of back wage claims of those employees. *See* 29 U.S.C. § 216(c);[38] *see also Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982) ("[U]nder section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full back wages.").

In an attempt to circumvent the effect of defendant's payment of overtime

---

[38]Section 216(c) provides, in pertinent part:

The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages. . . .

24

compensation to certain non-exempt employees, plaintiff contends that defendant's

calculation of the back wages due such employees contained errors. In support of her

contention, plaintiff relies on the following statements contained in G. Wayne

Culver's first affidavit:

> I have determined after reviewing [defendant's calculations in connection with the self-audit] that approximately 10 percent are in error.  This resulted in those employees not being paid the correct amount of money owed them as a result of the self-audit.  The Fair Labor Standards Act requires that these employees be properly compensated for all hours worked.  The Huntsville City Board of Education even after the self-audit is still not in compliance with the Fair Labor Standards Act.[39]

Mr. Culver does not, however, specify which calculations he found to be erroneous,

or even whether they resulted in underpayment of overtime compensation due.

Even if the court were to credit Mr. Culver's conclusions, they do not justify

certification of the broad class plaintiff has defined.   Indeed, the self-audit

demonstrates that a number of defendant's employees already have been compensated

for FLSA violations, under the supervision, and with the approval, of the United

States Department of Labor.  Plaintiff's implicit concession that ninety percent of

defendant's calculations of retroactive compensation were *correct* strongly undercuts

her claim that a class consisting of *all* of defendant's non-exempt, hourly employees

should be certified.  Moreover, as stated above, pursuant to 29 U.S.C. § 216(c), any

---

[39]Doc. no. 17, ex. B, at 1-2 ¶ 4.

employee who accepted payment of back wages due has waived any right to become a party plaintiff to this action.[40]

Plaintiff also appears to suggest that notwithstanding the self-audit, defendant continues to violate the FLSA. In particular, plaintiff has submitted Culver's second affidavit, in which he states that he reviewed the interview sheet completed by Rosa Whitman, a putative plaintiff, in connection with the self-audit. Culver further states that he spoke with Whitman about her practice of recording the time at which she began and ceased work each day, and reviewed Whitman's pay receipts. Based on the foregoing, Culver concludes that Whitman is not paid the proper rate of overtime compensation.[41]

Leaving aside the evidentiary deficiencies of the affidavit noted by defendant in its motion to strike, to the extent that plaintiff alleges *continuing* FLSA violations with respect to overtime compensation, those persons *presently* employed by defendant are not similarly situated to plaintiff. In her complaint, and in her declaration submitted in support of the motion for conditional class certification, plaintiff states that she was employed as a custodian from February of 2000 until

---

[40]For the same reason, the court finds no merit in plaintiff's assertion that those employees who were paid additional compensation as a result of the self-audit are due liquidated damages. *See* doc. no. 18 (Memorandum of Law in Support of Plaintiff's Motion for Conditional Class Certification), at 14.

[41]Doc. no. 17, ex. B, at unnumbered page 2.

*February of 2002.* The self-audit covered the period commencing on January 1, 2000, and ending September 14, 2002 — *i.e.*, after plaintiff's employment with defendant ended. Thus, plaintiff is not similarly situated to any potential plaintiff who would allege that defendant has continued to violate the FLSA by failing to properly compensate employees for overtime work performed.

Further, application of the *Stone* factors makes clear that conditional class certification is not appropriate here.

Plaintiff defines the class sought to be certified as those who "were employed as non-exempt employees of defendant in various job categories, such as teacher's aides, custodians, secretaries, assistant coaches, bus drivers, bookkeepers, cafeteria workers, and maintenance workers, all of which are non-exempt workers under the FLSA."[42] As another district court within this judicial circuit has observed, "different jobs generally carry different responsibilities and often require different hours of employment, undermining the similarity between the employees." *Reed*, 246 F. Supp. 2d at 1232. Even so, while conceding that the proposed class includes employees who hold varied job titles, plaintiff argues that "the pay provisions, job duties and each job title's place in the school system's hierarchy are similar."[43] However, there

---

[42]Doc. no. 1 (Complaint) ¶ 6.

[43]Doc. no. 18 (Memorandum of Law in Support of Plaintiff's Motion for Conditional Class Certification), at 9.

is no evidentiary support in the record for plaintiff's argument, nor has she made detailed allegations explaining the purported similarities among pay provisions, job duties, and "each job title's place in the school system's hierarchy."  On the other hand, defendant has offered evidence showing the varied manner in which the hours worked by custodians, children's nutrition program workers, teacher's assistants, and secretaries are recorded, processed, and paid.  For these reasons, the court concludes that plaintiff has not shown that she and members of the proposed class are similarly situated with respect to the first *Stone* factor.

As for the second factor, plaintiff asserts that the fact that potential plaintiffs work in different geographical locations is not conclusive.  While this is true, the fact that defendant operates, and potential plaintiffs may be employed, in as many as "forty-four schools in the City of Huntsville, including twenty-eight elementary schools, ten middle schools, six high schools, the Center for Developmental Learning, the Seldon Center, and the Huntsville Center for Technology, as well as four administrative facilities,"[44] does not assist plaintiff in establishing that potential members of the class are similarly situated.

The next factor to be considered is the extent to which the alleged violation occurred during different time periods and by different supervisory personnel.

---

[44]Doc. no. 21 (Defendant's Evidentiary Submission in Opposition to Plaintiff's Motion for Conditional Class Certification), ex. 1 (affidavit of Belinda K. Wilson), at 1.

Plaintiff contends that, because the superintendent of the school board is ultimately responsible for supervision and control of the school system, prepares the budget, and directs policy, the requisite similarity has been demonstrated. In contrast, defendant has provided evidence that cafeteria managers, principals, child nutrition program directors, custodial supervisors, and other supervisory personnel exercise control over non-exempt employees' overtime compensation. Here, as in *Reed*, plaintiff has not demonstrated that "principals, supervisors and other involved in decisions involving overtime compensation operate in lockstep," such that the court could find that members of the proposed class are similarly situated with respect to this factor.

Finally, plaintiff asserts that "putative plaintiffs that demonstrate similar violations present a stronger case for conditional certification; however, Federal district courts have held the character and number of violations will not prevent conditional certification."[45] Plaintiff again contends that the results of the self-audit demonstrate that potential class members are similarly situated. Specifically, plaintiff argues:

> The self audit presents evidence that a large number of nonexempt employees of the Huntsville City Board of Education were subjected to a policy that sought to minimize labor costs and discourage payment for overtime. Regardless of whether the overtime hours were accrued from working through lunch, recording scheduled as opposed to actual time,

---

[45]Doc. no. 18 (Memorandum of Law in Support of Plaintiff's Motion for Conditional Class Certification), at 12.

failing to keep accurate employee records, or failing to record hours worked, the policy of not paying overtime for hours worked over forty in a work week "is evidence that these employees are 'similarly situated' within the meaning of § 216(b) of the FLSA. *Harper* [*v. Lovett's Buffet, Inc.*], 185 F.R.D. [358,] at 364 [(M.D. Ala. 1999)]."[46]

In *Harper*, however, although plaintiffs alleged several FLSA violations, the court found that  plaintiffs had shown a pattern of potential FLSA minimum wage and overtime violations — namely, management's practice of "clocking out" employees while they presumably were still working.  Such is not the case here.  Moreover, another district court in this circuit has decertified a class where numerous types of unlawful conduct were alleged.  *See Stone v. First Union Corporation*, 203 F.R.D. 532, 546 (S.D. Fla. 2001) (In collective action under the Age Discrimination in Employment Act, where fourteen different adverse actions were alleged, "[t]he fact that the class members . . . asserted myriad different claims and that many of those claims differ[ed] from the claims asserted by [plaintiff]" weighed in favor of decertification.).  Finally, as stated above, pursuant to 29 U.S.C. § 216(c), any employee who accepted payment of back wages due as a result of the Department of Labor-supervised self-audit has waived any right to become a party plaintiff to this action.

For all of the foregoing reasons, the court is not satisfied that plaintiff has made

---

[46]*Id.*

a reasonable showing of similarity between herself and all other non-exempt employees of the defendants. At bottom, the class plaintiff seeks to certify simply is too broad. Accordingly, plaintiff's motion for conditional class certification and for issuance of notice to class members is due to be denied. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this __2nd__ day of April, 2004.

United States District Judge

31